Reed, P. J.,
delivered the opinion of the court.
*8 The suit was brought to cancel and set aside a deed of conveyance made .by appellant W. J. Stramann to his wife, the other appellant, on March 15, 1893, alleging that no consideration passed from Elizabeth H., that she was insolvent and without means, and that the husband conveyed the property to the wife “ with intent to hinder, delay and defraud his creditors and especially the plaintiffs.”
The pleadings of plaintiffs in alleging the supposed frauds were not only very broad, but detailed and specific. The issues were framed and the trial had upon the allegations of fraud.
There were no issues in regard to the respective equities of plaintiffs and defendant Elizabeth H. The judgment and decree legitimately should have been either sustaining the deed or declaring it void and fraudulent. The finding and decree are hard to be reconciled. After finding that there was no fraud, that the transactions between husband and wife were bona fide and legitimate and the deed valid, proceeds to adjudicate the priority of the respective claims, then concludes by setting the deed aside and subjecting the property to the payment of the debt of plaintiffs on account of defendant’s priority or precedence, or on some undefined ground hard to comprehend and not embraced in the issues; the result being substantially the same as if the issues of fact had been found for the plaintiffs.
The findings of fact by the court numbered consecutively from 1 to 10 were all in favor of defendants and were fully warranted by the evidence. Plaintiffs signally failed to establish fraud or controvert or discredit the allegations of the answer or to throw any doubt over the regularity and integrity of the transactions between the husband and wife.
It is true that the allegations of the answer were supported mainly, if not wholly, by the testimony of the husband and wife. Transactions of this kind are so often undertaken to cover the property and defraud creditors, and the opportunities are so great, that where the validity of the transaction is only shown by the testimony of the husband and wife, *9 courts scan them very closely and regard them with great suspicion, and where the proof is conflicting and such as to cast doubt upon the honesty of the dealings, such doubts are usually resolved in favor of the creditor; in other words, clear and unequivocal proof of the alleged facts is required; but where, as in this case, there is no conflict of evidence nor proof of circumstances casting doubt upon it, a court is from necessity compelled to accept the transactions as honest and legitimate.
In this case the history and character of the wife as shown by the evidence was such as to support her contention. Her industry was such that she continued employed at whatever wages were obtainable, and was employed as clerk by her husband before their marriage, and insisted on receiving wages from him at f25.00 per month while engaged in his hotel after marriage. She is shown very prudent and economical and desirous of personal gain.
The facts having been established beyond dispute, the trouble in the findings and decree arises in the application of the law by the learned court, and the attempt to apply the common law to the facts. Any attempt to harmonize our statutes with the common law and apply both must result in confusion and error.
The effect and intention of our statute, as well as that of other states where the statutes are in the same line, is to abrogate and destroy the old principles of the common law, releasing the wife from the humiliating and servient position formerly occupied at common law in regard to her property, investing her with an individuality and personal identity, releasing her property from the control of the husband and allowing her to control, handle and dispose of her individual property and deal with her husband in all that pertains to it, as well as with others, as if she were feme sole; and this being so much in derogation of the common law, and at variance with it, any attempt to apply both must end in failure. Under our statutes, courts can only carefully scrutinize transactions between husband and wife, to see *10 that they are not collusive and in fraud of the rights of others, and then apply to them the same rules and legal principles that control in dealing with others. There is no other logical ground.
In dealings between husband and wife, as between others, particularly in equity, the intention of the parties, where the same can be reduced from the facts and circumstances of any particular case, must control in the construction of them, and the same inferences and implications arise.
A troublesome element in most cases in court where questions in regard to dealings between husband and wife are involved arises from the fact that so much proper, mutual confidence exists, that the dealings and transactions are not witnessed and conducted with the same formalities that characterize dealings with outsiders; hence too much is left to be implied and inferred from the existing facts, compelling courts to deduce the intention from the facts.
Before applying the law and decisions in regard to transactions between husband and wife under the modern statutes to the facts of the case, it may be well to dispose of, as preliminary, the construction of the contract of the lease of the hotel between the parties.
The court holds the property in controversy liable for the debt, finding: “ That at the time the lease was made plaintiffs knew that the title to the property described in the complaint was in W. J. Stramann and that the business connected with the construction of the houses had been transacted by him in his own name and were ignorant of the agreement between the defendants, * * * and relied in part in malting said lease upon the apparent financial ability of W. J. Stramann. * * * The conveyance of March 15, 1893, ought not to be sustained to defeat the plaintiffs’ recovery of this claim for the debt of W. J. Stramann contracted upon the faith that he owned the property.”
The learned judge evidently misconceived the contract of leasing. From the fact that it was stated that the gross or aggregate rent for the full term of five years was to be *11 $11,850, the court construed it as a debt contracted at the time of the execution of the lease, to be paid absolutely, contracted on the part of the plaintiffs with regard to the property owned by W. J. Stramann and his financial responsibility. There are several obvious reasons why this construction is erroneous.
First: There was no consideration for any debt. The future use of the leased property for the full term of five years was to be the consideration and the entire term would have to elapse without payment of rent before the aggregate debt would be created.
Second: The lease might have been terminated at any time by the destruction of the property. The lease provides that in case the building shall be destroyed by fire or become untenantable .that the rents shall cease until rebuilt, but the rebuilding was to be at election of plaintiffs. Thus suspension of rent or an end of the lease is provided for.
Third: By the provisions of the lease immediately following the statement of the gross sum, the lessee was to pay each and every month rent in advance of occupancy, and upon failure to so pay there were stringent and elaborate provisions for terminating the lease, reentry and eviction of the tenant without legal process. The money having to be paid in advance, and the only consideration of such payment being the right to the use of the property in the ensuing month, it is evident that there could be no debt except by default in the advance payment and the occupation of the premises after such default, and that the inception of any debt for rent could only be after the default occurred; then by the terms of the lease it was optional with the plaintiffs to either allow a debt to be contracted as of that date, or to reenter and terminate the tenancy. The judgment sought to be enforced in this suit was based upon these provisions of the lease, and this construction of the contract was for default in the payment of rents for a fraction over four months prior to August 2, 1893.
If the gross sum of $11,850 mentioned was a debt' for which *12 W. J. Stramann became responsible at the time of executing the lease, the judgment should have been for the entire sum, less the payments made previous to the default. Plaintiffs should not be allowed to proceed and obtain a judgment for rent under the covenants of the lease, then adopt a repugnant theory for the purpose of collecting it.
The court also found as a fact “ that the defendant Elizabeth H. Stramann knew the lease was entered into by the husband, that he was negotiating therefor, and also knew of its making at the time it was made.” We were at a loss to understand the importance and pertinency of this finding or how it could in any way influence the judgment. By reference to the brief and argument of counsel for appellees we find it seriously urged, and numerous authorities cited in support of the proposition, that the knowledge of the wife of the intention to lease a hotel, and the leasing of it by the husband without a declaration by her of her private affairs, and that she had an equitable interest in the property of the husband iu no way involved in the contract of lease, created an estoppel, and that by reason of having kept silent in the matter in no way pertaining to her estate, she was legally liable for the debt of her husband subsequently contracted. The contention may be dismissed by the remark that there is not an element of estoppel in it and no authority cited supports the proposition. No precedent can be found where a court has carried the law of estoppel to the length here contended for.
As to the intention of the husband and wife in regard to the use of the money of the wife, all the evidence is that of those two persons. He owned the lots valued at $2,700. She had her money idle; said she would like to invest it. The husband suggested the improvement of his lots with her money, and that high rents could be obtained for the buildings. She finally agreed to the proposition on the basis of two thirds of the rent to her and one third to the husband. She formerly loaned another party $700, which had been paid in; had also from time to time loaned the husband temporarily a few hundred dollars, which he had returned. The cost of the *13 buildings was $6,600, which she handed over to him in amounts needed as the buildings progressed, to be paid by the husband to the contractors. All the evidence negatives the intention of the wife to relinquish her control or deliver the money to the husband to be by him managed and controlled. The words invest and investment have a well defined legal definition. And. Law Diet.: “ Invest. To place money so that it will yield a profit. * * * In common parlance, putting out money on interest, either by the way of loan, or by the purchase of income producing property.” Cent. Diet.: “ To employ for some profitable use; convert into some other form of wealth, usually of a more or less permanent nature, as in the purchase of property or shares or in loans secured by mortgage.”
It will be seen that in all cases of investment, although the specific character of the property is changed, the title and control remains with the investor.
The evidence shows that both husband and wife regarded it as an investment, and that the wife had received over $2,000. Although no deed passed at the time, the right of the wife to her pro rata share of the improved property was an equitable title that could have been asserted against the husband. Not a case cited by the learned counsel for appellees goes to the extent claimed, or is parallel. In Coon v. Rigden, 4 Colo. 283, it was said: “ Should the wife permit the husband to deal with and sell her separate property as his own, or obtain credit upon it as his own, undoubtedly this would be a fraud against which courts would extend their protection.”
In Mattingly v. Obley, 1 Ill. App. 626, relied upon by counsel, the opening sentence shows its want of applicability. It is: “ The transaction, if it disclose any interest on the part of the wife, shows nothing more than a loan of her money to the husband for the purpose of carrying on business.” The same may be said of Patten v. Grates, 67 Ill. 164, and Hocket v. Bailey, 86 Ill. 74.
Counsel says: “ I desire to especially call the attention of *14 the court to the case of Beecher v. Wilson et al., 84 Va. 813; ” and proceeds to state: “ Beecher was the owner of a farm in Virginia valued at $6,870. ■ At that time he was largely indebted to Wilsou et al. On said date he deeded to his son O. Beecher, Jr., as trustee for the separate use of the wife, the farm, and the court set aside the conveyance.” Counsel does not inform us whether the decision was at common law or .under statutes similar to ours, but this is unimportant, as he was largely indebted to the parties at the time of the conveyance, while in this case there were no debts until nearly five years after the investment and contract, and some months after the execution of the deed.
The failure to require a deed from the husband is readily explained by the confidence of the wife and the solvency of the husband; but after a time the ill health of the husband and the fear of his death, and that without a conveyance her property would pass to his heirs, impressed her with the necessity of calling for a deed, which was subsequently made.
At the time of the conveyance it is not shown that he owed any debts except the $2,500, secured by deed of trust upon the property, and the conveyance to her subject to such deed of trust could not operate as a fraud upon others. Even at common law, had the conveyance of his remaining equity in the property been made to the wife without other consideration than “ love and affection, ” it would have been sustained on the findings of facts by the court.
It is unimportant whether the interest of the wife was an equitable interest in the realty or a debt recognized by the husband. Regarding it as the latter, and even admitting the insolvency of the husband at the time of the conveyance, which is not shown, the debt being established as bona fide, as found by the court, both the supreme and this court have decided in numerous cases that the debtor, while he remained in the control of his property, could, by deed or assignment, prefer one creditor, to the injury or exclusion of others, for a bona fide debt. The debt being established beyond controversy, the wife must stand the same as any other creditor.
*15 The transaction between Stramann and wife could not be regarded as creating a personal debt by Stramann, as there was no promise to repay nor expectation of repayment. It was to be expended upon the property, — an investment. It increased the value of the real estate from $2,700 to $10,000. Smith v. Smith, 4 N. Y. Supp. 669, was a case almost identical in its facts, only that the parties were reversed. The wife had the title to the lots. The husband had money in the bank at low interest, and proposed to use the money to construct buildings on her lots. He built the block at an expense of $4,500. Afterwards the husband requested her to convey the property to him. She declined. The husband brought suit to compel a conveyance or to obtain an equitable lien for the money expended in building. The lien was decreed. The wife appealed to the general term, where the decree was affirmed. She then appealed to the court of appeals, where the decree was again affirmed. (125 N. Y. 224.) The court said: “ We think the judgment is correct. It would be contrary to equity to permit the defendant, under the circumstances, without subjecting the property as security in some form to the expenditures made upon it with her knowledge and consent. She was informed by her husband that he had money invested at low interest which could be used in improving the property in such way as to yield a much larger income to him. From what was said she is chargeable with knowledge of his intention to expend the money only for the purpose of making a more profitable investment, and with this knowledge on her part she permitted him to erect the building. Unless the transaction gave him some claim or lien upon the property, he had, of course, no investment at all after he drew the money from the bank, and used it in the construction of the block.” See, also, King’s Heirs v. Thompson, 9 Pet. (U. S.) 204 ; Perry v. Board, 102 N. Y. 99 ; Finlayson v. Finlayson, 17 Ore. 347 ; Garner v. Second Nat’l Bank, 14 U. S. S. C. Supp. 390.
“ The courts allow the claims of wives against their husbands, when properly established, just the same consideration, *16 force and integrity as that of strangers.” Riley v. Vaughn, 116 Mo. 169. And see Cole v. Lee, 45 N. J. Eq. 779; Iowa City Bank v. Weber, 72 Iowa, 137; Jones v. Davenport, 44 N. J. Eq. 33; Denny v. Denny, 123 Ind. 240 ; Schaer's Appeal, 140 Pa. St. 420; Chadbourne v. Williams, 45 Minn. 294; Leath-white v. Bennett, 11 Atl. Rep. 29 (N. J. Eq. Court), and authorities in foot note. Although the conveyance by Stramann to his wife was of the entire property, it was subject to the mortgage of $2,500 put upon it by Stramann, and as shown by the evidence was not equal in value to the amount the wife had invested. Consequently no property of the husband was conveyed to the wife.
The court erred in its application of the law to the facts found. The decree must be reversed and the cause remanded with instructions to enter a decree dismissing the suit.

Reversed.